# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Cause No. 1:18-CR-83-HAB |
| | ) | |
| BRADLEY M. COX | ) | |

## OPINION AND ORDER

This matter comes before the Court on Defendant's pro se Objections to Magistrate Recommendation (ECF No. 86), filed on November 8, 2019. In his filing Defendant makes various objections to the Magistrate Judge Susan Collins' Report and Recommendation (ECF No. 73), which recommended that Defendant's Motion to Suppress Based on Violation of *Miranda* (ECF No. 47) be denied. The Court finds no basis to reject the Report and Recommendation and will overrule Defendant's objections.

**I.   Factual Background[1]**

**A.   *August 22, 2018***

In May 2018, FBI Special Agent Jason Stewart began assisting local Indiana law enforcement in an investigation of a scheme whereby individuals were being extorted for sexually explicit material via Facebook accounts. Through the course of his investigation, Agent Stewart was able to track an IP address connected to the scheme to Burns Post Construction ("BPC"), a business located in Macy, Indiana. On August 22, 2018, Agent Stewart and FBI Special Agent Joseph Gass traveled to BPC to continue the investigation.

Upon their arrival, Agents Stewart and Gass spoke with the owner of BPC and determined that Defendant was a person of interest in the investigation. The agents received permission to

---
[1] The factual recitation is taken from evidence presented at an evidentiary hearing held on April 17, 2019, the transcript of which is docketed at ECF No. 61. Defendant did not call any witnesses at the hearing but did introduce one exhibit.

search Defendant's work computer and found two virtual private networks ("VPN"), one of which was connected to the extortion scheme. Having discovered the connected VPN, the agents decided to interview Defendant, who had left for the day, at his home in Kokomo, Indiana.

The agents arrived at Defendant's home in the early evening and parked their unmarked car on the side of the home. When Defendant answered the door, Agent Stewart asked Defendant if he would step outside and speak with them. According to Agent Stewart, he asked Defendant to step outside due to the sensitive nature of the investigation; he did not want to question Defendant about sexually explicit images and child pornography in front of Defendant's family. Defendant agreed to step outside, and the three men proceeded to have a conversation in front of the house.

Defendant initially denied any knowledge of the alleged extortion scheme. Agent Stewart gave Defendant two options: (1) Defendant could be truthful and, if charges were filed, he would be permitted to turn himself in; or (2) Defendant could continue to deny his involvement and, if charges were filed, he would be arrested at the agent's convenience. Defendant offered a third option: he would cooperate and provide the FBI with information in exchange for consideration from prosecutors if he was charged. Both agents advised Defendant that they could not make any promises on behalf of the United States Attorney's office regarding charging or sentencing decisions. Agent Gass then appealed to Defendant's love of his children, asking Defendant if he wanted his children to think of him as someone who did "something bad," or if he wanted his children to think he was "doing the right thing."

Soon after Agent Gass' remark about Defendant's children, Defendant began sharing incriminating information regarding his involvement in the extortion scheme. Defendant allowed the agents to photograph his phone, which contained a messaging app used in the extortion scheme,

and provided written consent for the agents to search his laptop. The laptop was provided to the agents by Defendant's girlfriend.

Agent Stewart ultimately decided to terminate the interview as the sun began to set because, he said, he was concerned that the under-dressed Defendant was getting "chilly." Agent Stewart initially testified that the interview began around 6:00 p.m. and concluded approximately ninety minutes later. However, after being shown the picture he took of Defendant's phone, which showed a time of 9:14 p.m., he testified that he was probably wrong about the start time. Agent Stewart conceded that the interview could have lasted more than two hours, but no more than three hours. Agent Gass' testimony was similar to the amended estimate; he testified that he believed the interview was between one-and-one-half and two hours in duration.

The agents both agreed that Defendant was not in custody during the interview, and that the interview was non-confrontational. Both agents were in plain clothes. Neither displayed their handcuffs or service weapons. Neither raised their voice towards Defendant. Defendant's path back into his home was not blocked. Further, Defendant was told on numerous occasions that he did not have to answer their questions, that he was not under arrest, that he would not be arrested that night, and that the agents would leave whenever Defendant requested.

**B.** *August 23, 2018*

The next day, Agent Stewart returned to BPC, this time accompanied by Rochester Police officer Matt Campbell. The stated reason for the visit was to return Defendant's work computer that had been seized the previous day for imaging. After returning the computer, however, Agent Steward and Officer Campbell went to Defendant's office to conduct a second interview.

Defendant's office was small, with a desk across from the door and space for multiple people to stand. Agent Stewart stood across from or along side Defendant's desk, while Officer

Campbell stood near the door. As with the interview at the house, Agent Stewart shut the door to Defendant's office due to the sensitivity of the investigation. Defendant again made incriminating statements, this time apparently without prompting. Defendant showed Agent Stewart and Officer Campbell incriminating information Defendant kept on a cloud storage account, while also turning the monitor away from the men when there was information he did not wish to share. There is no indication in the record as to how long this interview lasted.

Just as with the previous day's interview, it appears that the tone was relatively innocuous. Agent Stewart and Officer Campbell agree that Defendant was not in custody. Again, both men were in plain clothes, and neither displayed their handcuffs or service weapons. Defendant was advised on multiple occasions that he was not under arrest, that he was free to end the interview, and that Agent Stewart and Officer Campbell would leave if Defendant requested. Officer Campbell described the interview as "nonchalant," while Agent Stewart described it as "calm, and even friendly."

## II.     Legal Discussion

### A.     *Standard of Review*

When reviewing an objection to a magistrate judge's recommendation, the Court is obliged to analyze the recommendation *de novo*. 28 U.S.C. § 636(b)(1)(C). Thus, the Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id*. In other words, the Court's *de novo* review of Magistrate Collins' Report and Recommendation is not limited to her legal analysis alone; rather, the Court may also review her factual findings, and accept, reject, or modify those findings as it sees fit based upon the evidence. *Id*.

Generalized objections, absent specific legal authority, do not invoke the district court's obligation to perform a de novo review of a magistrate judge's decision: "De novo review of a magistrate judge's recommendation is required only for those portions of the recommendation for which particularized objections, accompanied by legal authority and argument in support of the objections, are made." *Banta Corp. v. Hunter Publ'g Ltd.*, 915 F. Supp. 80, 81 (E.D. Wis. 1995). "[W]ithout specific reference to portions of the magistrate's decision and legal discussion on the objected portion, the district court's duty to make a de novo determination does not arise. The general statements that a party 'objects' and 'incorporates all arguments previously made to the magistrate' will not suffice." *United States v. Molinaro*, 683 F. Supp. 205, 211 (E.D. Wis. 1988); *see also Thomas v. Arn*, 474 U.S. 140, 149 (1985) (holding that "[s]ection 636(b)(1)(C) . . . does not on its face require any review at all . . . of any issue that is not the subject of an objection").

**B.**     ***Defendant's Objections***

1.     *Refusal to Consider Pro Se Filings*

The Court has already addressed this argument in its Opinion and Order denying Defendant's Motion for Court to Consider Pro Se Filing (ECF No. 88), entered on November 14, 2019. The Magistrate Judge was within her discretion to strike Defendant's pro se filings while he was represented by counsel, and this Court will not disturb her ruling. Moreover, Defendant's repeated reference to, and incorporation of, his prior pro se filings is inappropriate at this stage since he is required to object to "specific portions of the magistrate's decision." *United States v. O'Neill*, 27 F. Supp. 2d 1121, 1126 (E.D. Wis. 1998). Pro se filings made before the Report and Recommendation were entered necessarily fail to address themselves to specific portions of the Magistrate Judge's decision. Accordingly, Defendant's objection to the Report and

Recommendation based on the Magistrate Judge's previous striking of Defendant's pro se filings is overruled.

2. *Officer Credibility*

Defendant next objects to the Magistrate Judge's finding that the testimony of the law enforcement witnesses was "entirely credible." (ECF No. 73 at 3). While the Magistrate Judge does not go into depth regarding her rationale behind the credibility finding, it appears to be based on her conclusion that the testimony "was not contested in any meaningful way." (*Id*. at 2–3). Defendant disagrees, arguing that internal inconsistencies as well as the working relationship between the agents and the United States Attorney render the testimony at the evidentiary hearing unreliable.

As noted above, this Court is not required to accept the Magistrate Judge's factual findings, including those regarding the veracity of witnesses. However, the Court is also not required to reject the Magistrate Judge's findings in favor of holding a hearing of its own. *United States v. Raddatz*, 447 U.S. 667, 674 (1980). Instead, 28 U.S.C. § 636 requires only that "the judge, on application . . . consider the record which has been developed before the magistrate and make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate." *Id.* at 675, quoting H.R. Rep., at 3, U.S. Code Cong. & Admin. News 1976, p. 6163.

The only discrepancy identified by Defendant is in Agent Stewart's testimony regarding the length of the August 22, 2018, interview. According to Defendant,

> Rather than accepting he [Agent Stewart] made a mistake[2] and the interrogation lasted around 3 hours, which in most cases would easily weigh as an indication of custody, he claimed the mistake was in the original arrival time and attempted to

---

[2] Defendant fails to reconcile his seemingly incompatible claims that Agent Stewart committed easily-proven perjury and his later claim that all the witnesses' testimony was "practiced" and scripted by the Government.

> keep the stated length between 1.5 and 2 hours, which can be more dependent on the circumstances in determining custody.

(ECF No. 86 at 2). This timing issue, according to Defendant, is "evidence that at least portions [of the testimony] are unreliable." (*Id*.).

In support of his argument, Defendant relies on *United States v. Slaight*, 620 F.3d 816 (7th Cir. 2017). According to Defendant, in *Slaight* "the Court found officer testimony to be uncredible [sic] solely because his statements made no sense when put in context with the actual circumstances." (ECF No. 86 at 3). This description of the holding is woefully incomplete. In *Slaight*, the Government already had evidence that the defendant had downloaded child pornography onto his home computer. This was sufficient probable cause to make an arrest, but the investigating officers wanted to question the defendant without giving the *Miranda* warnings in the hopes of exacting an admission that the defendant was the only one with access to his home computer. *Slaight*, 620 F.3d at 817–18. After breaking down the defendant's door, the defendant was transported to the federal building where he was interrogated in a "minute" room for approximately an hour. Towards the end of the interview, the officers denied the defendant's request to leave the room to smoke a cigarette, and then locked him in the room for forty minutes while they found out what was discovered on the defendant's computer. *Id*. at 819. It was in this context that the district court found "impossible to believe" an officer's testimony that "had Slaight told the officers that he wanted to leave, buy a plane ticket, and fly to Guatemala, they would have let him go even though they had enough evidence to arrest him." *Id*. at 820.

The facts here are far afield from those in *Slaight*. The Court does not find it "impossible to believe" that an agent, nine months removed, would be mistaken as to the time he began his questioning of Defendant. Agent Stewart admitted that his testimony regarding the length of the questioning was not exact, but instead was based on "the time, approximate time we departed

Burns Post Construction and drive time." (ECF No. 61 at 52). Agent Stewart testified that the drive from BPC to Defendant's home was about forty-five minutes, and he believes that he and Agent Gass left BPC "after 5:00 o'clock." (*Id.*). He went on to admit that it was possible the questioning lasted for more than two hours. (*Id.* at 58).

What Defendant does not address is the fact that Agent Gass corroborates Agent Stewart's testimony regarding the later arrival time. When Agent Gass was cross-examined by Defendant's then-counsel he testified, again based on departure and travel times, that he and Agent Stewart arrived at Defendant's home "6:30-ish, 7:00-ish is a rough estimate." (*Id.* at 110). Thus, rather than being an after-the-fact fabrication to keep the questioning time under two hours, the late-arrival explanation is wholly consistent with the evidence.

In any event, Defendant's former counsel amply called out the discrepancies in Agent Stewart's testimony during the evidentiary hearing, and the Magistrate Judge was able to weigh those discrepancies against the remaining evidence to make her credibility determination. After reviewing the entirety of the transcript of the May 17, 2019, evidentiary hearing, the Court finds no reason to question the Magistrate Judge's findings. Accordingly, Defendant's objection to the Magistrate Judge's credibility determination is overruled.

3. *Bias*

Defendant next objects to the Report and Recommendation on the basis that the Magistrate Judge "based her determinations from a position already in the Government's favor rather than weighing the circumstances in a truly objective manner." (ECF No. 86 at 5). While Defendant goes on to (largely incorrectly) nitpick the Report and Recommendation, what this objection really boils down to is Defendant's dissatisfaction with the ruling. However, "adverse rulings, without more, do not prove bias." *Owens v. Evans*, 878 F.3d 559, 566 (7th Cir. 2017). Defendant's unsupported

aspersions toward Magistrate Collins are wholly inappropriate, and his objection based on judicial bias is overruled.

4. *Specific Circumstances*

Defendant next objects to the Magistrate Judge's handling of several factors used in determining whether he was in custody for the purposes of *Miranda*. The admonitions set forth in *Miranda* were designed to safeguard the constitutional guarantee against self-incrimination. *J.D.B. v. North Carolina*, 561 U.S. 261, 269 (2011). The *Miranda* Court recognized that the inherently coercive nature of custodial interrogation could blur the line between voluntary and involuntary statements, and that the prophylactic measures were necessary to protect the constitutional right. *Id*. Accordingly, *Miranda* held that the government may not use statements stemming from the custodial interrogation of a defendant unless the government has utilized procedural safeguards effective to secure the privilege against self-incrimination. *Berkemer v. McCarty*, 468 U.S. 420, 428 (1984).

That does not mean that any statements obtained by the government in a conversation with a defendant are excluded unless preceded by *Miranda* warnings. *Miranda* warnings are not required merely because the person being questioned is a suspect or the focus of a criminal investigation. *United States v. Barker*, 467 F.3d 625, 628 (7th Cir. 2006). The privilege against self-incrimination is not imperiled by every conversation with government agents. Instead, the concern in *Miranda* was with the inherently coercive nature of custodial interrogation. Accordingly, a suspect must be both in custody and subjected to interrogation before *Miranda* warnings are required. *Berkemer*, 468 U.S. at 428; *Barker*, 467 F.3d at 628.

A person is "in custody" for *Miranda* purposes if there was a formal arrest or a restraint on his or her freedom of movement of the degree associated with a formal arrest. *J.D.B.*, 564 U.S. at

270; *United States v. Podhorn*, 549 F.3d 552, 556 (7th Cir. 2008). The Seventh Circuit has characterized the test as whether the person is deprived of his or her freedom of action in any significant way. *United States v. Snodgrass*, 635 F.3d 324, 327 (7th Cir. 2011) (citing *United States v. Thompson*, 496 F.3d 807, 810 (7th Cir. 2007)). This inquiry is an objective one. Neither the subjective views of the suspect being questioned nor that of the officer engaging in the questioning is considered. Rather than focus on the idiosyncrasies of individuals that can impact how questioning is perceived, the courts have opted for an objective test that asks how a reasonable person in the suspect's position would have understood the situation. *Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004); *Podhorn*, 549 F.3d at 556; *J.D.B.*, 564 U.S. at 271. The courts have identified two discrete inquiries critical to that determination: "(1) what were the circumstances surrounding the interrogation; and (2) would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave." *J.D.B.*, 564 U.S. at 271; *Podhorn*, 549 F.3d at 556. Once that is determined, courts apply the objective test to resolve the ultimate inquiry—whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Yarborough*, 541 U.S. at 663.

The Court would first note that all the objections presented in section D. of Defendant's brief address the interview at his home on August 22, 2018. (*See* ECF No. 86 at 7-13). At no point does Defendant object to the Magistrate Judge's evaluation of the August 23, 2018, interview at BPC. Defendant, then, has failed to make a specific objection to the Magistrate Judge's finding that there was no *Miranda* violation with respect to the second interview. As a result, the Court reviews that portion of the Report and Recommendation for clear error only. *Saban v. Caremark Rx, L.L.C.*, 780 F. Supp. 2d 700, 704 (N.D. Ill. 2011). A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with a

definite and firm conviction that a mistake has been made." *McAllister v. United States*, 348 U.S. 19, 20 (1954) (quoting *United States v. Ore. State Med. Soc'y*, 343 U.S. 326, 339 (1952)). This Court is not left with a firm and definite conviction that the Magistrate Judge made a mistake in evaluating the August 23, 2018, interview, and therefore that portion of the Report and Recommendation will be adopted.

Defendant raises multiple challenges to the Report and Recommendation's analysis of the August 22, 2018, interview, none of which the Court finds persuasive. Defendant first argues that limitations on his freedom of movement should weigh in favor of a finding of custody, stating "I did not enter my home during the 2–3 hour interrogation nor would I have been allowed to without an escort." (ECF No. 86 at 7). The primary issue with this argument is that his statement regarding what he would have been allowed to do is speculative, at best. To be sure, Agent Gass testified at some length about safety concerns he would have had with Defendant going into his home on his own. (ECF No. 61 at 112–13). However, none of those concerns were ever relayed to Defendant, because Defendant never asked to go into the home on his own. (*Id*. at 113). Agent Gass' undisclosed, subjective views cannot control the analysis here. *See Stansbury v. California*, 511 U.S. 318, 325 (1994) ("[I]t is the objective surroundings, and not any undisclosed view, that control the *Miranda* custody inquiry."). It is the undisclosed nature of the potential restrictions that separates this case from *Slaight*, where the restrictions of the defendant's movement were express, definite, and enforced by a locked door. *Slaight*, 620 F.3d at 819.

Defendant next challenges the Magistrate Judge's reliance on the testimony that Defendant was told he was "free to leave or end the interrogation." He first questions the veracity of that testimony, an issue which was addressed above and will not be repeated here. Substantively, Defendant, again relying on *Slaight*, argues that the simple act of advising a suspect that they are

free to leave does not "automatically justify the circumstances into being non-custodial." (ECF No. 86 at 8).

Defendant's statement of law is correct, as far as it goes. The Seventh Circuit did state, in *Slaight*,

> [b]ut being polite to a suspect questioned in a police station and telling him repeatedly that he's free to end the questioning and leave do not create a safe harbor for police who would prefer to give *Miranda* warnings after the suspect has confessed rather than before.

*Slaight*, 620 F.3d at 821. However, the factual dissimilarities between the case at bar and *Slaight* prevent any straightforward application of the above-quoted excerpt. In *Slaight*, there was a clear disconnect between the officers' words and actions; while the defendant was being told he was free to leave he was also being locked in the interrogation room. Here, the agents' actions were fully consistent with their oral pronouncements. Defendant's movement was never restricted, he was never denied the opportunity to leave (because he never asked), and he was not put under arrest at the end of the interview. All this is to say Defendant is correct that the agents' statements to him do not establish a non-custodial interview, although those statements are certainly relevant to the inquiry. *See*, *e.g.*, *United States v. Fazio*, 914 F.2d 950, 956 (7th Cir. 1990). Instead, it is their consistent actions that are important.

Defendant next objects to the Magistrate Judge weighing the location of the interview in the Government's favor, claiming that she should have put more emphasis on his isolation rather than the fact that the interview was outside. (ECF No. 86 at 10). Again, Defendant's legal position is correct, but it does not help him. Seventh Circuit precedents do focus on whether an interview is in "public view" rather than simply if it is outside. *United States v. Ruiz*, 785 F.3d 1134, 1145 (7th Cir. 2015); *see also Berkemer*, 468 U.S. at 438. But nothing in the record indicates that Defendant was questioned in an outside-yet-private location like the secluded hiking trail or the

dark alley he identifies in his objection. (ECF No. 86 at 10). Instead, Defendant was questioned on the front porch of a single-family home that "sits on the corner of a residential neighborhood, corner of two streets." (ECF No. 61 at 9). This would suggest the possibility that Defendant's neighbors, or anyone else using the public streets, could happen upon the interview at any time. The Court finds that the interview was sufficiently public to weigh against a finding of custody.

Next, Defendant objects to the weight given to his isolation from his family. He specifically objects to the Magistrate Judge's reference to *Howes v. Fields*, 565 U.S. 499 (2012), in which a prison inmate was questioned outside of the presence of other inmates, claiming that reference to *Howes* was made "so as to negate any weight given to the circumstance." (ECF No. 86 at 10). According to Defendant, there are many cases "remarkably similar to [his]" that the Magistrate Judge could have cited that would have supported his claim of custody. (*Id.*). No such cases are identified by Defendant.

Contrary to Defendant's assertion, the Court finds that nearly all decisions discussing isolation are in factual circumstances very different from Defendant's. *See*, *e.g.*, *Maryland v. Shatzer*, 559 U.S. 98 (2010) (inmate removed from general population); *Minnesota v. Murphy*, 465 U.S. 420 (1984) (interview in the office of suspect's probation officer); *Mincey v. Arizona*, 437 U.S. 385 (1978) (interview conducted while suspect was admitted to a hospital); *Jackson v. Curry*, 888 F.3d 249 (7th Cir. 2018) (officer's refused suspect's request to phone family members). None of these cases, nor any other cases cited to the Court, hold that speaking with law enforcement on the front porch of one's home is sufficient isolation so as to weigh in favor of custody simply because a door separates him from his family.

Defendant further objects to the Magistrate Judge's weighing of the fact that he voluntarily spoke with the agents, saying that his case is different from the cases relied upon by the Magistrate

Judge because Defendant "was asked to come outside and speak with them before [he] had any indication what they wanted to speak about." (ECF No. 86 at 11). This is a distinction without a difference. The United States Supreme Court has held that a defendant's subjective knowledge of all the circumstances and consequences attendant to his choice to speak with police is irrelevant to determining whether an interview is custodial. *California v. Beheler*, 463 U.S. 1121, 1125 n.3 (1983). And even if Defendant didn't know exactly what the agents wanted to speak about, he surely had an inkling that it wasn't a benign conversation; it is not every day that two FBI agents show up at a person's door after having been at their place of employment. The record is clear that the Defendant voluntarily stepped outside of his home and spoke with the agents. The Court finds no error in the Magistrate Judge's analysis.

Defendant also objects to how the Magistrate Judge weighed the length of the interview. However, the Magistrate Judge conceded in her Report and Recommendation that "the length of the interview may weigh in favor of finding that Defendant was in custody." (ECF No. 73 at 19). Since the Magistrate Judge found in Defendant's favor on this element, the Court sees no purpose in addressing Defendant's contentions regarding the case law the Magistrate Judge cited to reach that conclusion.

Finally, Defendant challenges the Magistrate Judge's weighing of the way the interview was conducted. This objection is again based on Defendant's challenge to the credibility determination that has already been addressed. Defendant states that "there is no way for the Court to know what method was used to elicit the change from denial to incrimination," and that "there is no way to truly know for sure if voices were raised, commands issued, or threats or promises made." (ECF No. 86 at 12, 13). Whatever existential truth this statement contains, the agents testified at the evidentiary hearing on Defendant's motion, and Defendant presented no

contradictory evidence of his own. The Court sees no reason to disturb the Magistrate Judge's credibility determination.

By focusing on the individual factors, Defendant misses the forest for the trees. A court reviewing a *Miranda* challenge does not conduct a divide-and-conquer analysis, but must instead consider the totality of the circumstances, including (1) the location of the interrogation; (2) the duration of the interrogation; (3) any statements made by the suspect during the interrogation; (4) any use of physical restraints during the interrogation; and (5) whether the suspect was released at the end of the interrogation; and whether (1) the encounter occurred in a public place; (2) the suspect consented to speak to the officers; (3) the officers informed the individual that he was not under arrest; (4) the individuals were moved to another area; (5) there was a threatening presence of several officers and a display of weapons or physical force; (6) the officers deprived the suspect of documents needed to depart; and (7) the officers' tone of voice was such that their requests would likely be obeyed. *United States v. Patterson*, 826 F.3d 450, 455 (7th Cir. 2016); *Ambrose*, 668 F.3d at 956. After weighing these factors and others, the Magistrate Judge concluded that there was no *Miranda* violation. Notably, Defendant *does not* object to this determination, but rather only to how the individual factors were handled. Regardless, the Court finds no error in the Magistrate Judge's weighing of the circumstances and would overrule an objection to her ultimate determination.

5.   *Recording Interviews*

In the last section of his objection, Defendant asks this Court to rule, for the first time anywhere, that the testimony of law enforcement officers should be given little weight if they have not taken steps to "objectively verify," i.e., record, interviews. The Court is not inclined to make such a drastic change to the law, and, in any event, it is not clear that such a change would alter

the ruling on Defendant's objection. *United States v. Jenkins*, 850 F.3d 912, 918 (7th Cir. 2017) ("unlawfully obtained evidence should not be suppressed when the police act with an objectively reasonable good-faith belief that their conduct is lawful"). Therefore, this objection is overruled.

### III. Conclusion

For the reasons stated above, the Court ADOPTS the Report and Recommendation (ECF No. 73), OVERRULES the Defendant's Objection (ECF No. 86), and DENIES the Motion Suppress (ECF No. 47).

SO ORDERED on November 27, 2019.

                                       s/ Holly A. Brady
                                       JUDGE HOLLY A. BRADY
                                       UNITED STATES DISTRICT COURT