# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:18-CR-83-HAB |
| | ) | |
| BRADLEY M. COX | ) | |

## OPINION AND ORDER

On August 22, 2018, Defendant Bradley M. Cox admitted his involvement in an online scheme to extort sexually explicit material from unwilling victims. Since his indictment for that scheme, Cox has consistently tried to suppress that confession. Having failed to suppress the conviction under *Miranda*, Cox has returned to this Court to posit a related, yet distinct, claim that his confession was involuntary. Cox claims that the conduct of the officers prior to his confession was coercive, so much so that it overcame his free will. Specifically, Cox contends that the officers' discussion of a potential "agreement" was "per se coercive" (ECF No. 124-1 at 4), requiring this Court to suppress his confession. For the reasons set forth below, the Court disagrees, and will once again deny Cox's motion to suppress.

**A.   Factual Background**

The facts surrounding Cox's August 22, 2018, interrogation have been discussed multiple times and at length both by this Court and Magistrate Judge Collins. Following a brief investigatory visit to Cox's employer, FBI Special Agents Jason Stewart and Joseph Gass went to Cox's home hoping to ask him questions about the suspected extortion scheme. They arrived in an unmarked squad car wearing plain clothes. When Cox answered the door, the Agents asked him if he would speak with them outside; they did not want to question him in front of his family given

the explicit nature of the investigation. Cox agreed, and the three men began a discussion on Cox's front porch.

Cox initially denied any knowledge of the extortion scheme. After approximately ten minutes of denials, Agent Stewart posed two options to Cox: (1) Cox could be truthful with the agents and, if Cox were charged, he would be able to turn himself in to authorities; or (2) Cox could continue to deny his involvement, in which case he would be arrested at the agents' convenience if he was charged. Cox posed a third option: he would cooperate and provide the FBI with information in exchange for consideration from the Government should he be charged. While neither agent expressly rejected this suggestion, both made it clear that they could not make any promises on behalf of the United States Attorney regarding charging or sentencing decisions. Ultimately, the men reached a "gentlemen's agreement" that they would proceed under Agent Stewart's first option. Cox then proceeded to make the statements that are the subject of his motion to suppress.

**B.     Legal Discussion**

A confession is voluntary if, "in the totality of circumstances, it is the product of rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *United States v. Gillaum*, 372 F.3d 848, 856 (7th Cir. 2004) (internal quotations and citation omitted). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). Courts "analyze coercion from the perspective of a reasonable person in the position of the suspect," *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001), and consider the following factors: "the defendant's age, education, intelligence level, and mental state; the length of the

defendant's detention; the nature of the interrogations; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food or sleep." *Id.*

As noted above, Cox's main assertion is not that any of the above factors, considered together or separately, rendered the agents' conduct coercive. Instead, he asserts that the "gentleman's agreement" was "legally synonymous with a promise, and the Courts [sic] have recognized that both promises and threats are per se coercive tactics." (ECF No. 124-1 at 4). It is true that a false promise of leniency may render a statement involuntary. *United States v. Villalpando*, 588 F.3d 1124, 1128 (7th Cir. 2009). This is because "[a]n empty prosecutorial promise could prevent a suspect from making a rational choice by distorting the alternatives among which the person under interrogation is being asked to choose." *Id.*, quoting *United States v. Montgomery*, 555 F.3d 623, 629 (7th Cir. 2009). However, successful challenges to confessions based on false promises are few and far between. The case law indicates that the statements of law enforcement must be materially false in a way that significantly understates the suspect's potential criminal liability. *See*, *e.g.*, *United States v. Goldstein*, 611 F. Supp. 626, 632–33 (N.D. Ill. 1985).

The flip side of this coin is that law enforcement tactics need not be pure as the driven snow for a confession to be admissible. "Trickery, deceit, even impersonation do not render a confession inadmissible." *Villalpando*, 588 F.3d at 1128, quoting *United States v. Kontny*, 238 F.3d 815, 817 (7th Cir. 2001). Representations by law enforcement that they will bring a suspect's cooperation to the attention of prosecutors do not render a subsequent confession involuntary. *United States v. Charles*, 476 F.3d 492, 497 (7th Cir. 2007). It is ultimately the Government's burden to demonstrate that Cox's statement was voluntary by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489 (1972). Here, the Government offers as evidence the transcript of the evidentiary hearing on Cox's first motion to suppress.

After reviewing the entirety of that transcript, the Court finds no reason to believe that Cox's will was overborne such that his statements were involuntary. This is because, at the most basic level, none of the statements by the agents could ever be construed as promises of leniency. Cox identifies the relevant promise as "the false promise of being able to turn myself in at a time convenient to me." (ECF No. 124-1 at 5). This is not a promise of leniency. It says nothing about Cox's potential criminal liability, the charges he would face, or potential sentences should he cooperate. Rather, this is a statement about when Cox would be arrest if he was charged. Such statements are not legally coercive. *United States v. Mizyed*, 927 F.2d 979, 981 (7th Cir. 1991).

Cox also points to the fact that he left the conversation believing that he would be permitted to work for the FBI by serving as an informant. (ECF No. 124-1 at 6–8). If Cox held this belief, it does not change the analysis. First, there is no evidence in the record indicating that either agent ever advised Cox that he could serve as an informant. Cox may have drawn a mistaken inference from the conversation, but his mistaken belief about the scope of a promise does not render his confession involuntary. *Lord v. Duckworth*, 29 F.3d 1216, 1222 (7th Cir. 1994). Moreover, both agents were clear in their testimony that they repeatedly advised Cox that they could not offer or promise any leniency in return for his cooperation. (ECF No. 61 at 90, 91, 94, 102). While the agents did advise Cox that it would be better for him if he told the truth, that is not the kind of statement that renders a confession involuntary. *Mizyed*, 927 F.2d at 981.

The agents' "promises" aside, the Court does not find that a consideration of the relevant factors demonstrates coercion here. As Cox's filings with this Court demonstrate, there is nothing in his age, education, intelligence level, or mental state that render him particularly susceptible to law enforcement tactics. His filings have been consistently clear, concise, and well-researched, and demonstrate a fundamental knowledge of his rights. In addition, Cox was familiar with the

criminal justice system prior to these events, providing him with further insight into his rights and duties vis-à-vis the agents. *Dassey v. Dittmann*, 877 F.3d 297, 304 (7th Cir. 2017). While the overall length of the interrogation was considerable, the length prior to the time Cox made the statements was not. Cox began confessing his involvement within ten minutes of the start of the interview. (ECF No. 61 at 61). Therefore, this is not a situation where the agents wore down Cox over an extended period. There was nothing about the nature of the interrogation that suggests coercion. Both agents were clear that the discussion between the men was professional, no raised voices were used, and the agents did not display their firearms. (Id. at 29–30). Nor was Cox subjected to any kind of physical force. (*Id*. at 30). It is true that Cox was not advised of his *Miranda* rights, but the Court does not conclude that this factor, in and of itself, can render Cox's statements involuntary on these facts.

A complete view of the facts demonstrates that the question was not whether Cox would confess, but instead on what terms Cox would confess. The agents presented their offer, and Cox presented his. The fact that Cox ultimately failed to prevail in this negotiation is not evidence of coercion; quite the opposite, in fact. *Villalpando*, 588 F.3d 1129. The Court finds that Cox voluntarily chose to make his statements after bargaining for the best terms he could get.

**D.     Conclusion**

For the foregoing reasons, Cox's Motion to Suppress (ECF No. 109) is DENIED.

SO ORDERED on April 9, 2020.

s/Holly A. Brady  
JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT