**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:18-CR-83-HAB |
| | ) | |
| BRADLEY M. COX | ) | |

**OPINION AND ORDER**

This matter comes before the Court on the Government's Second Motion to Continue Trial. (ECF No. 173) (the "Motion"). In the Motion, the Government asks the Court to continue the trial in this matter, currently set to begin on November 9, 2020, for ninety days. The Government cites the unavailability of an essential witness and the complexity of the case as grounds for the continuance. Defendant objects. Having reviewed the Motion, the Court finds that it states no basis for an excludable continuance under the Speedy Trial Act.

**A.    Factual and Procedural Background**

Defendant was charged by way of a Criminal Complaint (ECF No. 1) on September 7, 2018, with using a computer to "employ, use, persuade, induce, entice, or coerce a minor . . . to engage in sexually explicit conduct for the purposes of producing a visual depiction of such conduct," a violation of 18 U.S.C. § 2251(a). (ECF No. 1 at 1). Attached to the Criminal Complaint was an affidavit executed by FBI Special Agent Jason Stewart.

In the affidavit, Stewart detailed how Defendant had allegedly extorted several individuals via Facebook, including minors, into sending him sexually explicit photos and videos. It appears that the first thing investigators did, after speaking with at least one alleged victim, was to send a search warrant to Facebook for the "Facebook messages and IP address logs from approximately December 1, 2017, to April 12, 2018," of the account Defendant allegedly used to carry out the

"sextortion" scheme. In response, investigators received "hundreds of Facebook messages sent and received from" Defendant under Defendant's Facebook pseudonym. Investigators sent subsequent subpoenas to an internet service provider and a text messaging app. From the information collected through the subpoenas, investigators were able to trace the illegal activity to Defendant's employer.

The subsequent events have been cataloged in several orders in this case. Investigators interviewed Defendant, who admitted to using a Facebook account to extort sexual images from his victims, some of whom were minors. Defendant explained to the investigators how he took control of dormant Facebook accounts for use in his scheme. He also showed the investigators a cloud storage account where he maintained the photos and videos he received. Investigators were further able to determine that Defendant kept a file on his work computer containing a list of usernames and passwords, two of which were for the Facebook account he used in the scheme and the account of one of his victims.

Defendant was subsequently charged via indictment (ECF No. 17) and superseding indictment (ECF No. 34). Defendant now faces six counts; all are related to his use of a Facebook account to solicit and extort sexual images from his victims.

**B.    Legal Analysis**

The Speedy Trial Act requires that, "[i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1).

If a trial does not commence by the date required by the Speedy Trial Act, the Act demands that "the information or indictment . . . be dismissed on motion of the defendant." *Id*. § 3162(a)(2); *see also Bloate v. United States*, 559 U.S. 196, 199 (2010) (stating that the Act "entitles [the defendant] to dismissal of the charges if [its] deadline is not met, § 3162(a)(2)"); *Zedner v. United States*, 547 U.S. 489, 507–08 (2006) ("The relevant provisions of the Act are unequivocal. . . . When a trial is not commenced within the prescribed period of time, 'the information or indictment shall be dismissed on motion of the defendant.' § 3162(a)(2)."). "The Act, however, excludes from the 70–day period delays due to certain enumerated events. § 3161(h)." *Bloate*, 559 U.S. at 199.

Here, the Government cites two provisions in support of its request for an excludable continuance: the unavailability of an essential witness under 18 U.S.C. § 3161(h)(3)(A) and the complexity of the case under § 3161(h)(7)(B)(ii). The Court will address each in turn.

**1.**   *The Government Cannot Establish the Unavailability of an Essential Witness*

From the earliest days of the investigation into Defendant's wrongdoing, it was clear that Facebook would play a central role in this case; it was, after all, the means by which Defendant was able to carry out the alleged scheme. The Motion takes this rather obvious notion and turns it into a basis for a continuance. What the Court sees, however, is a failure on the part of the Government to prepare its case for trial.

According to the Government, the evidence in this case consists of "hundreds of pages" of digital evidence and "several thousand pages" of Facebook account records. (ECF No. 173 at 2). The Government states that:

> A review of the Facebook records in this case also makes clear the need for a witness or witnesses from Facebook with the appropriate knowledge, skill, and/or experience to testify regarding, among other things, the information that is or is not needed to create a Facebook account, the process of creating a Facebook account, how certain aspects of Facebook, such as Facebook Messenger, function, the location of Facebook servers, what other digital information, such as IP addresses,

3

> is captured by Facebook and when, why, and how that information is captured, how multiple Facebook accounts could be linked, why certain information may or may not be in the records of a particular Facebook account, and why information produced by Facebook is in the format it is.

(*Id.* at 2–3). The Government further asserts that a witness from Facebook is "necessary to establish that the proposed Facebook records as well as the Facebook returns from the orders issued under 18 U.S.C. § 2703(d) in this case are true and correct business records under F.R.E. 803(6)." (*Id*. at 2).

Assuming, for a moment, the accuracy of the Government's representations, the need for a Facebook witness should not have been a recent discovery. As reflected in Special Agent Stewart's affidavit, the Government has had "hundreds of Facebook messages" since September 2018. For at least 25 months, then, the Government has been keenly aware of the need to authenticate and explain the Facebook records at trial.

Despite more than two years of lead time, it appears that the Government did not even *begin* its search for a competent Facebook witness until **October 16, 2020**. It was then that a subpoena, presumably for trial testimony, was sent to Facebook. According to the Motion, the Government received an automated response from Facebook on October 21, 2020, acknowledging the subpoena and advising the Government to "respond to the message if live testimony was needed." Despite the ever-approaching trial date, the Government waited two days to respond, "with specific information about the necessity of live testimony and requested the name and contact information of the appropriate witness." (*Id*. at 3). Having received no response, the Government waited an additional five days before following up.

The Government finally received a response on October 28, 2020, via an email from Facebook to the FBI. The email indicated that Facebook had attempted to contact AUSAs Miller Lowery and Nokes but was unsuccessful in reaching either. It appears that the FBI responded,

asking Facebook to contact either AUSA at the main number for the United States Attorney's Office. This email was the last communication between the Government and Facebook.

Against that factual background, the Government claims that "a witness or witnesses from Facebook are essential witnesses," and, presumably, are unavailable for trial. Subsection 3161(h)(3)(A) of Title 18 of the United States Code excludes "[a]ny period of delay resulting from the absence or unavailability of a defendant or an essential witness." The statute continues that "a defendant or an essential witness shall be considered absent when his whereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence" and "a defendant or an essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial." 18 U.S.C. § 3161(h)(3)(B).

The statute provides no definition for determining who is an "essential witness." The legislative history on the Speedy Trial Act indicates that an "essential witness" is "a witness so essential to the proceeding that continuation without the witness would either be impossible or would likely result in a miscarriage of justice. For example, a chemist who has identified narcotics in the defendant's possession would be an 'essential witness.'" *United States v. Marrero*, 705 F.2d 652, 656 (2nd Cir. 1983); quoting S. Rep. No. 1021, 93d Cong., 2d Sess. 37 (1974). In the absence of a statutory definition, the D.C. Circuit has held that an "essential witness" is one "whose testimony would be extremely important to the proceeding, perhaps providing proof that was not otherwise attainable"—in other words, "a witness so essential to the proceeding that continuation without the witness would either be impossible or would likely result in a miscarriage of justice." *United States v. McNeil*, 911 F.2d 768, 773 (D.C. Cir. 1990) (per curiam) (internal quotation marks omitted); accord *United States v. Ortiz*, 687 F.3d 660, 663 (5th Cir. 2012); *United States v.*

*Hamilton*, 46 F.3d 271, 277 (3d Cir. 1995); *United States v. Eagle Hawk*, 815 F.2d 1213, 1218 (8th Cir. 1987); *Marrero*, 705 F.2d at 656. To prove a witness is "essential," the Government "must show how the testimony that it expects a particular witness will give fits within the overall framework of its case, and why that witness's testimony would be not only useful, but essential." *McNeil*, 911 F.2d at 774.

The Motion capably establishes why the Facebook witness cannot be considered essential here. The Motion provides:

> 23. Once an appropriate witness or witnesses from Facebook are identified, the government will need time to meet with those witnesses to address the issues identified in paragraph 12 as well as any others that might arise. The witnesses will also need time to review the Facebook records in this case prior to their testimony.
>
> \* \* \* \*
>
> 25. The nature of the intended testimony from Facebook does not lend itself to a stipulation between the parties since the identity of the appropriate witness or witnesses from Facebook is unknown to the government at this time and the full extent of their anticipated testimony is unknown.

(ECF No. 173 at 4–5). These two paragraphs tell the Court that: (1) there is no witness that can, at this time, provide the testimony the Government seeks; (2) the Government does not know what that testimony will be; and (3) the Government will not know what that testimony will be until such time as some unidentified witness takes the time to familiarize themselves with this case. The Court is not willing to find that an unknown and hypothetical witness who will provide hypothetical and unknown testimony is "essential" to the Government's case.

This is to say nothing of the very real possibility that Facebook never provides the witness the Government seeks. On Facebook's "Information for Law Enforcement Authorities" page, the company states, in no uncertain terms, that it does not provide "expert testimony support." https://www.facebook.com/safety/groups/law/guidelines/. The same page also states that Facebook records are "self-authenticating pursuant to law and should not require the testimony of

a records custodian." *Id*. Whether or not Facebook's interpretation of the Federal Rules of Evidence is correct, *see United States v. Barber*, 937 F.3d 965, 969-71 (7th Cir. 2019), the company does not seem inclined to provide the kind of witness support that the Government seeks.

Even if the Facebook mystery man (or woman) is an essential witness, the Court cannot conclude that they are unavailable. The Government does not state which of the alternatives in 18 U.S.C. § 3161(h)(3)(B) render its witness unavailable. Of course, it is difficult for the Government to articulate a basis for unavailability when it cannot even provide the Court with a name. The witness here exists only in the imagination of the Government. He or she may be ready, willing, and able to appear at the currently scheduled trial. He or she may not. But whatever the existential facts, the Government has provided the Court with no information that would carry its burden of establishing the applicability of the exclusion. *United States v. Burrell*, 634 F.3d 284, 287 (5th Cir. 2011).

Moreover, regardless of the grounds for unavailability, the Government would need to establish its "due diligence" in attempting to obtain the witness's appearance. 18 U.S.C. § 3161(h)(3)(B). "Due diligence," as used in the Speedy Trial Act, is not defined in the statute. However, the case law and commentary have consistently indicated that the term should be given its plain meaning, that to satisfy § 3161(h)(3)'s "due diligence" requirement the Government must present evidence that the witness's presence could not be obtained through its "reasonable" efforts. *See* Black's Law Dictionary 523 (9th ed. 2009) (defining "due diligence" as "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation"); *United States v. Patterson*, 277 F.3d 709 (4th Cir. 2002).

Whether or not the Government has used due diligence since its October 16, 2020, subpoena (and reasonable minds could certainly differ as to whether corresponding with the "general law enforcement portal at Facebook" constitutes due diligence) (ECF No. 173 at 3), there is no definition of due diligence that explains the Government's conduct from September 2018 to October 2020. If, as the Government asserts, "[t]estimony on the issues related to the voluminous Facebook records in this case is necessary to not only establishing the elements of the offenses charged against [Defendant] but to establishing the means by which those offenses were committed," (*Id*. at 4), the Court cannot conceive of why the identification of a witness to provide this testimony was left until three weeks prior to trial. The Government provides no reason for the delay, nor does it assert that any earlier efforts were made to obtain a Facebook witness. Simply put, sitting on one's hands for more than two years is not reasonable, no matter how feverishly one works in the weeks that follow.

In addition, the Court does not accept the factual foundation for the Government's essential witness argument. The Motion would have the Court believe that only a Facebook employee can explain to a jury how Facebook works. The Court simply does not believe that the United States government, with its nearly limitless resources and manpower, employs no one who understands the mysteries of a social network. Indeed, the evidence attached to the Criminal Complaint demonstrates that Special Agent Stewart has received training in "computer network security, including hacking, network defense, and network infrastructure," has participated in investigations of "the production, distribution, and possession of child pornography, and extortion," and is familiar with "the usage of computers and online communication to conduct criminal activity." (ECF No. 1 at 2–3). It seems clear that Stewart, or someone else working on this case, was able to sift through the evidence in this case and connect social media posts and text messages to

Defendant. The Court sees no reason why Stewart and the other investigators cannot provide the testimony the Government seeks. The Government may prefer a Facebook representative, but its preference does not make that representative essential.

**2.** *The Government is not Entitled to an Ends of Justice Continuance*

Alternatively, the Government contends that an ends of justice continuance is appropriate due to the complexity of this case. A continuance granted "on the basis of [a judge's] findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial" is excludable from the speedy trial clock. 18 U.S.C. § 3161(h)(7)(A). In determining whether such a continuance is warranted, a court can consider "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." 18 U.S.C. § 3161(h)(7)(B)(ii).

The Court has no reason to doubt the Government's assertion that this case has many potential witnesses and a large amount of digital evidence. (ECF No. 173 at 4). At the same time, this case has one defendant and six counts. Those numbers pale in comparison to other cases where complexity was found. *See*, *e.g.*, *United States v. Thomas*, 774 F.2d 807 (7th Cir. 1985) (six defendants); *United States v. Fogarty*, 692 F.2d 542 (8th Cir. 1982) (seven defendants, ten unindicted coconspirators, and forty-five alleged separate overt acts that took place over seven states and three foreign countries). This may not be a run-of-the-mill felon in possession case, but it is also not an international conspiracy.

Even if the Court found the case to be complex, "the complexity of a case does not automatically justify an ends-of-justice continuance." *United States v. Theron*, 782 F.2d 1510,

1513 (10th Cir. 1986). Instead, in such cases "the judge will still have to weigh the right of society and the defendant to a speedy trial against the 'ends of justice.'" *Id.* (quoting *United States v. Carrasquillo*, 667 F.2d 382, 387 (3d Cir. 1981)).

The Court cannot find that the complexity of this case outweighs the interest of the defendant and society in a speedy trial. This case may be complex, but the Government has had more than two years to prepare. The Motion does not explain why those two years were insufficient. Moreover, in the Government's First Motion to Continue Trial, filed only one month ago, the Government *did not* cite subsection (h)(7)(B)(ii) as a ground for the continuance. (ECF No. 159). That motion described the case as "complex," but only in the context of permitting the Government to maintain continuity of counsel under subsection (h)(7)(B)(iv). The idea that this case is too complex to try seems to be a new revelation.

What the Government is really claiming is that, based on its preparation to date, the case is too complex to take to trial in a week and a half. However, the complexity has existed since at least September 2018. The Government has known for at least two years that this matter involved multiple victims and hundreds of Facebook messages. The Government cannot claim to be surprised or suddenly caught unaware of the complexity of the case. *United States v. Crane*, 776 F.2d 600, 605 (6th Cir. 1985). As such, the Court finds no basis to grant an ends of justice continuance on complexity grounds.

The Court's conclusion is further supported by 18 U.S.C. § 3161(h)(7)(C). That subsection states that no ends of justice continuance can be granted because of "lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." That is exactly what has occurred here. Despite having more than two years to prepare, the Government waited until the virtual eve of trial to begin the process of identifying what it now describes as an

essential witness. It is this dilatory conduct that puts the Government in this position, not the unavailability of a witness or the complexity of the case. The Government is the author of its own hardship, and the Court will not hold Defendant's speedy trial rights hostage to the Government's procrastination.

**C.     Conclusion**

According to the Court's calculation, Defendant's speedy trial clock expires on December 8, 2020. Given the intervening Thanksgiving holiday, and in the interest of assuring that the trial commences before that date, the Court can offer the Government only a seven-day continuance. Accordingly, for the reasons set forth above, the Government's Second Motion to Continue Trial is GRANTED in part. The trial in this matter is continued to November 16, 2020. The deadline for the parties to exchange witness lists is continued to November 6, 2020. The deadline for the submission of stipulations and the delivery of exhibit books is continued to November 13, 2020. All other trial related dates and deadlines are CONFIRMED.

SO ORDERED on October 30, 2020.

 s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT