UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cause No. 1:18-CR-83-HAB |
| ) | |
| BRADLEY M. COX ) | |

**OPINION AND ORDER**

Following his conviction on all six counts of the superseding indictment, Defendant filed the instant Motion to Vacate Judgment (ECF No. 239). Defendant asserts that the Assistant United States Attorney committed prosecutorial misconduct during her closing statement when, Defendant alleges, she improperly vouched for the Government's witnesses and appealed to the emotions of the jury. Defendant has identified several instances of alleged misconduct, and the Court will address each in turn.

**A.    Improper Vouching**

"Improper vouching is trying to bolster a witness's believability with 'evidence' that was not presented and may well not exist." *United States v. Edwards*, 581 F.3d 604, 610 (7th Cir. 2009). This understanding of improper vouching includes prosecutorial expressions of a "personal belief in the witness's truthfulness" but does not include a prosecutor's reminder to the jury "of evidence presented at the trial that tends to show that a witness was telling the truth." *Id*. at 609–10. When evaluating whether the government's comments to the jury reached the level of prosecutorial misconduct, a court must first examine whether the remarks themselves were improper. *United States v. Sandoval*, 347 F.3d 627, 631 (7th Cir. 2003). If improper, the court then evaluates the statements in the context of the entire record and determine whether the defendant was deprived of a fair trial. *Id.* In so doing, a court must consider:

>(1) the nature and seriousness of the misconduct; (2) the extent to which the comments were invited by the defense; (3) the extent to which the prejudice was ameliorated by the court's instruction to the jury; (4) the defense's opportunity to counter any prejudice; and (5) the weight of the evidence supporting the conviction.

*Id*.

As Defendant acknowledges, he failed to object to any of the alleged vouching statements at trial. As such, the Court can disturb the jury's verdict only if the error was plain, meaning that it was obvious, affected Defendant's substantial rights to such an extent that he would not otherwise have been convicted, and seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Tucker*, 714 F.3d 1006, 1011–12 (7th Cir. 2013). That is a lengthy way of saying that the Court cannot grant Defendant a new trial unless there was an error so egregious that the Court should have stepped in even though no objection was made. *United States v. Alexander*, 741 F.3d 866, 869–70 (7th Cir. 2014).

**1.      *Were Any Statements Improper?***

**a.**     *Shianna Waller*

Defendant first objects to the following comment regarding Shianna Waller:

>Shianna Waller testified – you can take a look at her demeanor. It was clear that this was the last place on earth that she wanted to be. There is no part of her that wanted to come in here and testify. She has no motive to lie about anything.

(Trial Tr., Day 5, Vol. I, pp. 40–41). Defendant's objection to this statement is two-fold. First, Defendant asserts that it is untrue. Second, Defendant claims that the AUSA's discussion of Waller's demeanor was improper.

Defendant's first objection has some merit. Waller admitted during her testimony that she had access to, and solicited nude photographs of women from, the Rolp Lang and Quinton Sayger Facebook accounts. (Trial Tr., Day 3, Vol. I pp. 47; 64–65; 68; 115–16). Waller had any number of reasons, then, to deflect attention from her own conduct and onto another individual, Defendant

2

specifically. The Court agrees with Defendant that the AUSA's statement in this regard was misleading and improper. *Fisher v. Nix*, 920 F.2d 549, 552 (8th Cir. 1990) (statement that there was nothing in the record indicating that witness was "let off" in exchange for her testimony was improper vouching where witness had entered into agreement with state for her testimony).

Defendant's complaint about the AUSA's commentary on Waller's demeanor is less compelling. Several courts have addressed the same argument made by Defendant and concluded that statements regarding a witness's demeanor are appropriate. *United States v. Bentley*, 561 F.3d 803, 814 (8th Cir. 2009) (appropriate for prosecutor to base credibility assessment on witnesses' demeanor at trial); *United States v. Rivera*, 22 F.3d 430, 438 (2nd Cir. 1994) (statement that witness "had the demeanor of a person who told the truth" not impermissible); *United States v. Granville*, 716 F.2d 819, 822 (11th Cir. 1983) (demeanor of witness was part of "matters in evidence"); *United States v. Bright*, 630 F.2d 804, 823–24 (5th Cir. 1980) (comments on witness's "demeanor and her appearance" not improper vouching). Indeed, the Court expressly instructed the jurors that they could consider a witness's demeanor in judging credibility. (Trial Tr., Day 5, Vol. II, p. 7–8). Accordingly, the Court finds no misconduct on the part of the AUSA in pointing out Waller's demeanor.

Defendant further objects to the following statement made by the AUSA in her closing argument: "There is no conduct charged in this Indictment out of the Quinton Sayger Facebook account that in any way, shape or form, ties back to Shianna Waller." (Trial Tr., Day 5, Vol. I, p. 78). Defendant claims that this statement is "not only untrue but contradictory to Agent Stewart's testimony and thus an implicit vouching for Shianna Waller's testimony." (ECF No. 257 at 2). The Court must agree with Defendant. During cross-examination, Agent Stewart testified as follows:

> Q. And didn't she [Waller] tell you [Agent Stewart] in the interview she asked victim AR for nudes through both the Quinton Sayger and the Rolp Lang account?
>
> A. I believe so.
>
> Q. And didn't she tell the FBI that she possible could have sent nude images from the accounts?
>
> A. Yes.

(Trial Tr., Day 4, Vol. I, p. 169). Agent Stewart directly connects Waller to the Quinton Sayger account and the efforts at extorting nude images from AR. Regardless of the weight one gives Agent Stewart's testimony, it connects Waller to the charged conduct in some "way, shape or form." There is no way to view the AUSA's statement as anything other than a misleading and improper attempt to bolster Waller's credibility. *See Fisher*, supra.

**b.** *Roger Potter*

Defendant objects to the following statement by the AUSA regarding Roger Potter:

> . . . Roger Potter who, by the way, doesn't have any reason to be anybody but Roger Potter, because it's clear that he, apparently, could get any girl to send him any picture to the tune of thousands of pictures any time he wanted to. So Roger Potter had no reason to become anybody else. He had a treasure trove of pictures from which Bradley Cox decided he was going to pilfer.

(Trial Tr., Day 5, Vol. I, p. 72). Defendant claims that the AUSA had "no way of inferring this absolute claim from the evidence introduced at trial." (ECF No. 257 at 2).

If anything, the AUSA understated Potter's online prowess. Potter testified that he had gotten nude images from "every girl that [he had] talked to really." (Trial Tr., Day 2, Vol. I, p. 108). As the AUSA notes, Potter was able to assemble a collection of two to three thousand photographs. (*Id.*). These included photos of three of the victims identified in the indictment. (*Id.* at 112–14). The AUSA's characterization of Potter was more than consistent with the evidence introduced at trial and was not improper vouching.

4

   **c.**    *Quinton Sayger*

Defendant next objects to the following statement by the AUSA regarding Quinton Sayger:

> Quinton Sayger clearly was a love struck teen. It is a fanciful tale to think that this love struck boy wanted so badly to get JH back that he would concoct this whole scheme, send pictures of her to her and everybody else and just to get her back.
>
> The fact that he was so upset about what happened that he knocked the paper towel holder off the wall and got suspended certainly tells you he is not the one behind doing any of this.

(Trial Tr., Day 5, Vol. I, p. 77). Defendant argues that these statements are "clearly impermissible vouching" and not reasonable inferences from the evidence. (ECF No. 257 at 3).

The Court finds the AUSA's statements to be fair characterizations of the evidence. Sayger testified that he was "heartbroken" following his breakup with JH, and that, despite the breakup, he did not dislike JH for any reason. (Trial Tr., Day 2, Vol. I, p. 198). Sayger's suspension for the paper towel incident is also in the record. (*Id*. at 192). The AUSA's statements reminding the jury of these facts were not improper.

Defendant next objects to the AUSA's statement that Sayger looked like a "love struck teen" and that he did not "need to hide behind a VPN to get girls." (Trial Tr., Day 5, Vol. I, p. 78). Once again, commenting on the appearance of a witness is not improper. *Bright*, supra. Moreover, the statement regarding Sayger's ability to engage in relationships with women is consistent with the evidence in the record: Sayger had previously dated JH and had a girlfriend at the time of his testimony. (Trial Tr., Day 2, Vol. I, p. 191). The AUSA's statements were well-within the bounds of appropriate argument.

Finally, Defendant objects to the AUSA's comment that it was "certain that [the Quinton Sayger] account was hacked." (Trial Tr., Day 5, Vol. I, p. 71). The evidence is consistent with the AUSA's argument. Sayger testified that his account was hacked. (Trial Tr., Day 2, Vol. I, p. 192).

As noted above, Shianna Waller admitted to using the Sayger account to solicit nude photographs. (Trial Tr., Day 3, Vol. I pp. 47; 64–65; 68; 115–16). There seems to be little question that the Quinton Sayger account was used by any number of people to obtain and distribute nude photos. The AUSA's statement was consistent with the evidence and proper closing argument.

**d.** *Agent Stewart*

The final instance of alleged improper vouching is the following statement regarding Agent Stewart:

> Which brings me to Special Agent Stewart. Mr. Cox twisted and turned and tried to somehow impugn the credibility of Special Agent Stewart. Somehow tried to say that, I guess what Mr. Cox said wasn't what he said. In order for that to make any sense on any planet, Special Agent Stewart would have had to either made up everything that is in his report, mischaracterized everything in his report, which is not reasonable. Why? Because the evidence backs up what Mr. Cox said.

(Trial Tr., Day 5, Vol. I, p. 74–75). Defendant argues that this is "a clear judgment of his credibility by the prosecutor which should be left up to the jury to determine based on the evidence." (ECF No. 257 at 4).

A prosecutor improperly vouches for the credibility of an officer where she implies that facts not before the jury lend an officer credibility, such as the oath an officer takes to follow the law. *United States v. Cornett*, 232 F.3d 570, 575 (7th Cir. 2000). However, where a comment on credibility is derived from the evidence, such as noting consistent statements between officers, nothing improper has occurred. *United States v. Alexander*, 163 F.3d 426, 429 (7th Cir. 1998). Here, the AUSA's statements are derived from the evidence introduced at trial. The thrust of the AUSA's comments is that it is unreasonable to believe that Agent Stewart lied when one considers the weight of the evidence supporting his report. The Court does not find anything improper in the AUSA's comments.

**2.      *Did the AUSA's Comments Constitute Plain Error?***

Having determined that two of the AUSA's statements regarding Shianna Waller constitute improper vouching, the Court must now examine whether those statements are plain error such that Defendant's conviction must be vacated. Even had Defendant objected to the AUSA's closing argument, the Court finds that Defendant was not prejudiced by the statements. This conclusion is inescapable under a plain error analysis.

The Court does not find that the AUSA's comments were invited, to any degree, by Defendant. However, each of the remaining considerations weigh against vacating Defendant's conviction. The AUSA's conduct was not egregious. The offending comments were two statements uttered during a five-day trial. Even within the closing statement, the comments regarding Waller constitute two sentences of a thirty-one-page monologue. The Court struggles to believe that these two sentences even caught the jury's attention; if they did, they were but a drop in an ocean of information the jury received.

The Court notes that both statements regarding Waller were made during the Government's chief closing argument. Accordingly, Defendant had the opportunity to counter any prejudice in his own argument. In addition, the jury was expressly instructed that "[t]he statements and arguments of Ms. Miller Lowery and Mr. Cox are not evidence. If what Ms. Miller Lowery or Mr. Cox said is different from the evidence as you remember it, the evidence is what counts." (Trial Tr., Day 5, Vol. II, p. 5). The Court assumes, as it must, that the jury followed the Court's instructions. *United States v. Jones*, 248 F.3d 671, 676 (7th Cir. 2001). Any prejudice, then, was ameliorated by the Court's instruction.

Finally, the Court believes that the weight of the evidence against Defendant more than overcomes any potential prejudice. Defendant argues that his was "not an open and shut case."

(ECF No. 239 at 4). True, this was not a bank robbery case where the tellers identified the defendant as the robber. However, the crime is, by its nature, one where the evidence showed that Defendant made efforts to cover his tracks through third-party Facebook accounts, VPNs, and burner text message apps. Despite those efforts, the Government had two witnesses that positively identified Defendant as the individual in charge of the Quinton Sayger and Rolp Lang accounts. The Government was able to directly tie much of the conduct to Defendant's work computer. Forensic analysis of the Pinger and Facebook data further tied Defendant to these crimes. Given all this evidence, the Court finds no reason to believe that the AUSA's statements were so prejudicial as to outweigh the evidence presented.

Given the foregoing, the Court finds no basis to conclude that plain error occurred. The Court is satisfied that Defendant would have been convicted with or without the statements by the AUSA regarding Waller's involvement with the Quinton Sayger and Rolp Lang accounts. While the Court does not endorse the AUSA's statements as a model of effective advocacy, it cannot conclude that they seriously affected the fairness, integrity, or public reputation of the judicial proceedings. Considering all the foregoing, the Court does not believe that it had an independent duty to step in where Defendant elected not to object. In short, no plain error occurred here.

**B.      Playing on the Jury's Emotions**

In his Supplemental Brief, Defendant raises for the first time the argument that the AUSA improperly played on the jury's emotions by referring to him as "evil," "diabolical," and other similar adjectives. This, Defendant argues, constitutes prosecutorial misconduct that supports vacating the conviction. The Court finds no merit in Defendant's assertion.

Like improper vouching, to prove prosecutorial misconduct, a defendant must demonstrate both that statements made by the prosecutor were improper and that those improper statements

deprived the defendant of a fair proceeding. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "[T]he relevant question is whether the prosecutor['s] comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Ruvalcaba v. Chandler*, 416 F.3d 555, 565 (7th Cir. 2005).

It is true that a prosecutor cannot make an "argument solely to inflame the passions of the jury." *United States v. Waldemer*, 50 F.3d 1379, 1384 (7th Cir. 1995). However, "every criminal case involving a victim will create some sympathy." *Rodriguez v. Peters*, 63 F.3d 546, 565 (7th Cir. 1995) (quoting *Pierson v. O'Leary*, 959 F.2d 1385, 1391 (7th Cir. 1992)). This case is certainly no different. The evidence demonstrated that multiple, innocent, underage high school girls were extorted over an extended period to produce graphic, pornographic images of themselves. Those images were then distributed to other individuals, including their peers. "[I]t is likely that the jury was outraged by the nature of the crime and sympathetic to the victims . . . long before any of the closing arguments." *Rodriguez*, 63 F.3d at 565. The Court finds nothing improper about the AUSA's characterization of Defendant's conduct.

Moreover, the jury was instructed on precisely the issue Defendant raises. The jury was instructed, "[d]o not let sympathy, prejudice, fear or public opinion influence you." (Trial Tr., Day 5, Vol. II, pp. 3–4). The majority of the identified invectives were also in the Government's chief closing argument, giving Defendant ample opportunity to respond. And, as discussed above, the weight of the evidence against Defendant was strong. Even if the Court found the comments improper, it would not find a denial of due process. *See Howard v. Gramley*, 225 F.3d 784, 793 (7th Cir. 2000) (citing the *Darden* factors).

**C.     Conclusion**

For the foregoing reasons, Defendant's Motion to Vacate Judgment (ECF No. 239) is DENIED.

SO ORDERED on March 9, 2021.

                                           s/ Holly A. Brady
                                          JUDGE HOLLY A. BRADY
                                          UNITED STATES DISTRICT COURT