UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cause No. 1:18-CR-83-HAB |
| ) | |
| BRADLEY M. COX ) | |

## OPINION AND ORDER

Following his conviction on all six counts of the Superseding Indictment, Defendant has filed a Motion for New Trial (ECF No. 240). Defendant raises three issues: the exclusion of two defense witnesses; the alleged destruction of evidence; and alleged defects in several jury instructions.[1] This matter is now fully briefed (ECF Nos. 251, 267) and ready for determination.

**A.      Exclusion of Defense Witnesses**

Defendant first objects to the Court's determination that neither Marc Hazelwood nor Hailey Wolf would be permitted to testify at trial. The Court allowed Defendant to call both witnesses outside of the presence of the jury and to examine the witnesses to establish the relevancy of their testimony. Following Defendant's offers of proof and his cross-examination of FBI Special Agent Jason Stewart, the Court heard arguments from the parties. Having considered those arguments and the offers of proof, the Court concluded that the testimony of Hazelwood and Wolfe was irrelevant and would not be admitted.

District courts are given broad discretion in assessing the admissibility of proffered evidence. *United States v. Davis*, 772 F.2d 1339, 1343 (7th Cir. 1985). This is particularly true where a district court makes an evaluation under Fed. R. Civ. P. 403, as district courts can "best perform the balancing required by" the Rule. *Id*. at 1344 (collecting cases).

---

[1] Defendant also re-asserts the issues raised in his Motion to Vacate Judgment (ECF No. 239). The Court rejects those grounds for all the reasons set forth in its Opinion and Order denying that motion. (ECF No. 270).

A motion for new trial based upon an erroneous ruling on admissibility can be granted only if there is a "reasonable possibility" that the jury's verdict was affected by the material not properly admitted into evidence. *United States v. Plescia*, 48 F.3d 1452, 1464–65 (7th Cir. 1995). The Court is also mindful that the impact of any particular evidentiary ruling is "diminished in proportion to the length of the trial so that 'while every additional day of trial increases the possibility of error, it correspondingly reduces the risk that any single error may have prejudicial effect upon the result.'" *Id.* at 1465 (quoting *In re Beverly Hills Fire Litigation*, 695 F.2d 207, 227 (6th Cir. 1982).

**1.**     ***David Kilcline***

Before one can assess the evidentiary determinations regarding Hazelwood and Wolfe, they must first understand the role that David Kilcline played in the trial. For all intents and purposes, Kilcline was the unseen boogeyman of this case. Defendant set up Kilcline as an alternative individual who could have committed the charged crimes. However, any connection between Kilcline and this case is tenuous, at best.

Kilcline was interviewed by Agent Stewart as part of the investigation in this case. Kilcline admitted that he had a trove of pornographic images and gave Agent Stewart access to a cloud storage drive where the images were held. None of Kilcline's images were obviously child pornography. Kilcline had also labeled each of the files on the drive with the name of the individual featured in the photographs; none of them were labeled with the names of the victims in this case, but Agent Stewart conceded that there was evidence that files had been deleted from the drive.

The most direct connection between Kilcline and this case came from Shianna Waller. Waller testified that she believed that Kilcline had access to the Quinton Sayger Facebook account, one of the accounts Defendant was found to have used to commit the crimes charged. Waller

2

further testified that Kilcline had asked her for nude images but had done so through his own Facebook account. Kilcline also tried unsuccessfully to meet with Waller in person.

Kilcline was also the subject of several motions made during trial. At the close of the third day of trial, Defendant sought the assistance of the Court and the United States Marshal to secure the attendance of Kilcline at trial. The Court heard from Defendant's computer expert, Darrin Miller, the next morning regarding efforts to serve Kilcline. Miller testified that he made three attempts to serve Kilcline with a trial subpoena, twice at his residence and once at his last known place of employment. Only the subpoena was tendered, however; Miller admitted that the documents he attempted to serve did not include a witness fee or mileage check. Finding that Kilcline had not been properly served, the Court denied Defendant's request for assistance.

Defendant also moved for a mistrial due to Kilcline's failure to appear at trial. Defendant asserted that Kilcline was an essential witness to the defense. Once again, the Court found that Defendant had failed to properly serve Kilcline. The Court further found that Defendant had failed to demonstrate that Kilcline was an essential witness. As a result, the motion for mistrial was denied.

Finally, Defendant moved to have Kilcline declared unavailable for the purposes of Fed. R. Evid. 804. The Court denied this motion as well, again noting that Defendant had failed to demonstrate that Kilcline had been properly served with a trial subpoena. None of these trial rulings are challenged in the instant motion for new trial.

2. ***The Offers of Proof***

Hazelwood testified that he went to school with Kilcline but "never really dealt with him." According to Hazelwood, his brother's girlfriend's sister, Emily Schwartz, had her Facebook account hacked in 2017. Nude images of Schwartz were taken from her Facebook account by the

hacker. Kilcline admitted in Facebook messages that he was the one that had hacked Schwartz' account. Notably, Agent Stewart testified that one of the files in Kilcline's cloud drive was labeled with Schwartz' name.

Wolfe testified that she and Kilcline dated in middle and high school. In 2014, Kilcline began asking Wolfe for nude images of herself. After initially providing those images, she became uncomfortable and refused to provide additional images. Kilcline threatened that, if she did not send additional photos, he would release the ones he had to other individuals. Wolfe eventually found out that Kilcline was posting her photos to a website, but she could not remember what the website was called. All images sent by Wolfe to Kilcline were sent directly to Kilcline's Facebook account.

**3.     *Defendant has Failed to Establish that Hazelwood or Wolfe Could Provide Relevant Information***

Evidence is relevant if: (1) it has any tendency to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence in determining the action. Fed. R. Evid. 401. Irrelevant evidence is not admissible. Fed. R. Evid. 402. Even where evidence is relevant, a district court may still exclude the evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Evidence of a potential third-party perpetrator must meet these standards before it is properly admitted. *United States v. Dooley*, 578 F.3d 582, 590–91 (7th Cir. 2009); *United States v. Wilson*, 307 F.3d 596, 601 (7th Cir. 2002).

Rule 404(b) of the Federal Rules of Evidence is typically used by prosecutors seeking to introduce evidence of a criminal defendant's prior misconduct as proof of motive or plan to commit the crime at issue. However, a defendant can seek to admit evidence of other crimes under this rule

4

if it tends to negate the defendant's guilt of the crime charged against him. *United States v. Della Rose*, 403 F.3d 891, 901 (7th Cir. 2005). This is commonly referred to as reverse 404(b) evidence. In determining whether to admit reverse 404(b) evidence, a district court must balance "the evidence's probative value under Rule 401 against considerations such as prejudice, undue waste of time, and confusion of the issues under Rule 403." *United States v. Reed*, 259 F.3d 631, 634 (7th Cir. 2001); *see also Della Rose*, 403 F.3d at 901–02; *Wilson*, 307 F.3d at 601. A defendant seeking to offer reverse 404(b) evidence is not held to the same standard as the Government would if it attempted to introduce Rule 404(b) evidence regarding the defendant because prejudice to the defendant is not a factor. *United States v. Seals*, 419 F.3d 600, 606 (7th Cir. 2005) (quoting *United States v. Stevens*, 935 F.2d 1380, 1404 (3rd Cir. 1991)).

Initially, as it did during trial, the Court finds that the testimony of Hazelwood and Wolfe would have been irrelevant under Rule 401. The Superseding Indictment charged, generally, that Defendant used the Quinton Sayger Facebook account, as well as an anonymous Pinger cell phone messaging application, to extort sexual images from four individuals. The Court failed to see at trial, and fails to see now, how testimony that Kilcline sought nude images from different individuals using different Facebook accounts (including his own) tends to negate Defendant's guilt of the crimes charged. Whatever generic similarities that Kilcline's acts shared with those of Defendant, they are not enough to render the testimony of Hazelwood or Wolfe relevant. *Seals*, 419 F.3d at 607.

Even if the testimony was relevant, its relevance was substantially outweighed by the risk of confusing the issues for the jury. The thrust of the defense is Defendant's statement in his closing argument that "[i]f someone else did it, then Bradley Cox didn't." (Trial Tr., Day 5, Vol. I, p. 52). Whatever existential truth this statement could have, Defendant wields it too broadly. In

5

Defendant's mind, if any other individual used the Quinton Sayger account to extort nude images from any other individual, then he is not guilty of the crimes charged. Thus, Defendant believes that, if he can prove that others committed similar acts to the ones he is alleged to have committed, the Government cannot prove its case.

But this is simply not true. The Government has never alleged that Defendant was the only individual with access to the Quinton Sayger account; to the contrary, the evidence showed that the account was used by multiple individuals. The Government has never alleged that Defendant is the only individual to ever use the internet to extort pornographic images; this conduct seems all too common. Instead, the Government alleged that Defendant performed specific acts, on specific days, directed towards specific victims. By excluding generically similar conduct directed towards different individuals on different days (sometimes even different years), the Court assured that the jury would focus on the issues before it rather than extraneous, unrelated conduct.

In addition, the Court fails to see how the testimony of Hazelwood or Wolfe would have changed the outcome of the trial. As noted above, Defendant was already able to connect Kilcline to the Quinton Sayger account, and was able to show Kilcline's propensity to seek nude photographs, through Waller. Defendant was able to establish through Special Agent Stewart that Kilcline kept a collection of photos he had obtained. The testimony of Wolfe and Hazelwood is little more than cumulative of, if far more tenuously connected to this case than, the testimony of Waller and Special Agent Stewart.

This Court made every effort to allow Defendant the opportunity to establish the admissibility of Wolfe and Hazelwood's testimony. It heard both individuals testify during their offers of proof. It withheld ruling on the admissibility of the testimony until after Defendant cross-examined Special Agent Stewart, since Defendant argued that he would demonstrate the

6

admissibility of the testimony through that cross-examination. It heard arguments from both sides. After all that, the Court exercised its discretion, evaluated the evidence under Rules 401 and 403, and made the appropriate ruling. Defendant's motion for a new trial based on the exclusion of Marc Hazelwood and Hailey Wolfe's testimony is denied.

**B.    Alteration of Digital Evidence**

Defendant next objects to what he describes as "the FBI's destruction of access to certain discovery materials during the trial." (ECF No. 240 at 2). Specifically, Defendant asserts that some of the materials from his work hard drive and cell phone, accessible to him pre-trial, were no longer accessible during the trial. This, he claims, was a violation of this Court's order that he be provided with a copy of these materials. (*See* ECF No. 202). The Government denies Defendant's accusations, pointing to Special Agent Stewart's statements to the Court that the materials provided to Defendant during trial were exact duplicates of what he reviewed pre-trial.

Even if the Court accepted the factual predicate for this objection, Defendant has articulated no grounds to grant a new trial. Whether this objection is viewed as one alleging the suppression of exculpatory evidence or prosecutorial misconduct generally,[2] Defendant would need to identify how his rights were materially affected. *See United States ex rel. Wilson v. Warden Cannon, Stateville Penitentiary*, 538 F.2d 1272, 1277 (7th Cir. 1976) ("suppression of material evidence justifies a new trial"); *United States v. Medina-Herrera*, 606 F.2d 770, 775 (7th Cir. 1979) (prosecutorial misconduct must be "prejudicial" to warrant a new trial). Defendant has failed in this regard.

---

[2] Defendant identified no legal grounds for this objection. Likewise, the Government cited no authority on this point in its response. As such, the Court has been left to adduce the legal, rather than factual, bases of the parties' positions.

As the Government correctly notes, Defendant has not, either at trial or in the briefing on the motion for a new trial, identified a single piece of evidence that was unavailable to him at trial. When asked to identify the issue with digital evidence, Defendant stated:

> Okay. Well, to put it on the record, the file – the information that the FBI gleaned from my cell phone, my cell phone, which they've introduced as an exhibit the information, the compilation of that information is a USD filed which needs a USDE reader.
>
> So if it is the case that there's no – that the same programs – I'm sorry – that there was no program on the hard drive itself to allow me to read it, then at some point between when I was accessing it here on that hard drive and this point, the program has been removed from the computer, because I was able to access the data from my cell phone at the time I was coming here, and I cannot access it now.
>
> I see that the files are the same. I just do not have the program to access it.

(Trial Tr., Day 4, Vol. I, p. 24). This statement does not specify a piece of evidence; it identifies a broad collection of evidence contained in his cell phone. Nor does Defendant identify how he intended to use the cell phone evidence or why it was material to his defense. Defendant has identified no additional evidence in his briefs, leaving the Court with no basis upon which to find that any destruction of digital evidence was material.

Once again, the Court did everything in its power to assure that Defendant had access to the digital information necessary to present his defense. It assured that he was brought to the courthouse for nearly thirty hours to review the hard drive containing the Government's digital evidence. The Court authorized funds for Defendant to retain a computer expert to assist him both before and during trial. It made its IT staff available before trial, as well as before, during, and after trial days. It went so far as to order Special Agent Stewart to assist the defense in accessing files on the hard drive. Despite all that assistance, Defendant failed to identify the Government's alleged destruction of evidence until Day 4 of trial and has yet to articulate a definitive basis for a new trial based on that destruction. Defendant's motion for a new trial on this basis is denied.

8

    **C.**    **Jury Instructions**

Finally, Defendant objects to three jury instructions given by the Court. In determining whether an error in a jury instruction warrants a new trial, the Court must consider whether the instructions, taken as a whole, "correctly and completely informed the jury of the applicable law." *Huff v. Sheahan*, 493 F.3d 893, 899 (7th Cir. 2007). A defendant is entitled to a new trial when the instructions "misstate the law or fail to convey the relevant legal principles in full and when those shortcomings confuse or mislead the jury and prejudice the objecting litigant." *Id*.

Here, however, Defendant faces an additional hurdle. When given the opportunity to object to the finalized jury instructions, Defendant failed to raise an objection to any of the instructions he now challenges. (*See* Trial Tr., Day 5, Vol. I, pp. 24–25). Accordingly, he must now satisfy the burdensome requirements of the plain error doctrine before relief can be granted. *See* Fed. R. Crim P. 52(b); *see also* Fed. R. Crim. P. 30 (requiring a party to object to "errors" in the instructions before the jury retires to deliberate). The plain error doctrine (almost exclusively the domain of the appellate court) allows a reviewing court to overlook the defendant's failure properly to object at trial to the asserted error if convinced that but for the asserted error the defendant would have been acquitted. *United States v. Felton*, 908 F.2d 186, 188 (7th Cir. 1990); *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir. 1984). *See also United States v. Balistrieri*, 577 F.Supp. 1532, 1546 (E.D. Wis. 1984) (district court applies plain error standard when ruling upon post-trial motions).

**1.**    *Instruction No. 13*

Defendant first objects to Instruction No. 13, which states:

> You have heard testimony that the defendant made statements to Special Agents Jason Stewart and Joseph Gass of the Federal Bureau of Investigation and Detective Lieutenant Matt Campbell of the Rochester Police Department. You must decide whether the defendant actually made the statement and, if so, how much weight to

>give to the statement. In making these decisions, you should consider all the evidence, including the defendant's personal characteristics and circumstances under which the statement may have been made.

(ECF No. 234 at 14). Defendant argues that the instruction is misleading because neither Joseph Gass nor Matt Campbell testified at trial.

This instruction is an accurate statement of the facts presented at trial. Special Agent Stewart testified that both Gass and Campbell were present during the August 23, 2018, interview of Defendant at Burns Construction. (Trial Tr., Day 4, Vol. I, pp. 103–04). Contrary to Defendant's assertion, the instruction does not vouch for Special Agent Stewart's testimony. Rather, it instructs the jury that they must determine whether Defendant made the statement based on "all the evidence, including the defendant's personal characteristics and circumstances under which the statement may have been made." There was no potential for this instruction to mislead the jury. Certainly, giving the instruction without objection by Defendant did not constitute plain error.

**2.**     ***Disjunctive Elements***

Defendant next objects to Instruction Nos. 18, 29, and 30 because they would permit the jury to convict Defendant of violating 18 U.S.C. § 875(d) if, in addition to the other elements, he communicated "a true threat to injure the property or reputation" of the victims. The objection stems from the fact that the Superseding Indictment charged that he communicated a threat to injure the "property *and* reputation" of the victims. (*See, e.g.*, ECF No. 34 at 3) (emphasis added). Defendant believes that it is unfair that the Government can charge him in the conjunctive while the jury is instructed in the disjunctive.

Whatever superficial appeal Defendant's argument may have, there is nothing improper with the instruction. *United States v. LeDonne*, 21 F.3d 1418, 1427 (7th Cir. 1994) ("However, where a statute defines two or more ways in which an offense may be committed, all may be

alleged in the conjunctive in one count in order to adequately apprise the defendant of the government's intention to charge him under either prong of the statute . . . [a]nd proof of any one of those acts conjunctively charged may support a conviction."). Defendant "understand[s] the case law," (ECF No. 240 at 4), but argues that the law "simply does not make sense." (*Id.*). Even if the Court agreed, it would have no choice but to follow Seventh Circuit law. Giving this instruction was not error, much less plain error.

3. ***Instruction No. 33***

Finally, Defendant objects to Instruction No. 33, which states:

> Transferring materials over the internet satisfies the interstate commerce requirement of the child pornography statute.

(ECF No. 234 at 34). Defendant asserts that this instruction is misleading because, while it came directly after the instruction on Count 6, the jury could have been misled to believing that it applied to Counts 1 through 5 as well. (ECF No. 240 at 3)

Regardless of whether the jury applied Instruction No. 33 to all the counts or one of the counts, it is an accurate statement of the law. *United States v. Chaparro*, 956 F.3d 462, 470 (7th Cir. 2020) ("The Internet is a facility of interstate commerce."). Therefore, if an image is transferred over the internet, it has satisfied the interstate commerce requirement of any statute containing such a requirement. *See United States v. Horne*, 474 F.3d 1004, 1006 (7th Cir. 2007) (explaining in a Hobbs Act case that the internet "crosses state and indeed international boundaries"). There was nothing misleading about this instruction, nor did giving the instruction constitute plain error.

**D.      Conclusion**

For the foregoing reasons, Defendant's Motion for New Trial (ECF No. 240) is DENIED.

SO ORDERED on March 11, 2021.

 s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT
